UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: JOE MICHAEL HYATT,   No. 11-11-10973 JS

Debtor.

## MEMORANDUM OPINION

Debtor Joe Michael Hyatt has proposed a liquidating Chapter 11 plan contained in Joe Michael Hyatt's Fourth Amended Plan of Reorganization, dated March 2014 ("the Plan"). *See* Docket No. 233. The Plan separately classifies and subordinates the punitive damages portion of the claim held by Cornelius Dooley, M.D. and Susanne Hoffman-Dooley (together, the Dooleys) to the claims of other creditors holding unsecured non-priority claims. The Plan also separately classifies the unsecured non-priority claim of Farm Credit of New Mexico, FLCA ("Farm Credit"), a wholly owned subsidiary of Farm Credit of New Mexico, ACA. The Dooleys objected[1] to approval of the Fourth Amended Disclosure Statement (the "Disclosure Statement") that accompanies the Plan. *See* Docket No. 234. On April 10, 2014, the Court held a hearing on approval of the Disclosure Statement.

The Dooleys assert that the Debtor's separate classification of Farm Credit's unsecured claim from their unsecured claim violates the classification requirements of 11 U.S.C. § 1122, and that the subordination of the punitive damages portion of their claim to general unsecured claims is improper. The parties have briefed the separate classification issues and whether the Debtor may subordinate the punitive damages claim,[2] and have stated on the record that they

---

[1] *See* Cornelius Dooley, M.D. and Susanne Hoffman-Dooley's Objection to Debtor's Fourth Amended Disclosure Statement Dated March 2014 - Docket No. 238.
[2] Following a hearing on the Debtor's Third Amended Disclosure Statement, the Court directed the parties to brief the issue of whether the Debtor may separately classify the Dooleys' punitive damages claim from other general unsecured creditors. *See* Order Resulting from Hearing on Third Amended Disclosure Statement – Docket No. 219.

believe the propriety of those classifications and of the subordination is ripe for decision. If the Plan is patently unconfirmable as a result of the Debtor's proposed classification scheme and the subordination of the Dooleys' punitive damages claim, a decision now instead of following a confirmation hearing potentially will avoid expensive, time-consuming discovery and a lengthy evidentiary hearing on confirmation of the Plan.

For the reasons stated below, the Court finds that the Debtor's separate classification of Farm Credit's claim is proper. Whether the Debtor may subordinate the Dooleys' punitive damages claim to claims of other general unsecured creditors through plan classification and treatment requires additional evidence that may be presented at a confirmation hearing. The Court therefore concludes that the Debtor's proposed classification scheme does not render the Plan patently unconfirmable as a matter of law.

## DISCUSSION

A. *Background, Procedural History, and the Debtor's Proposed Plan*[3]

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 9, 2011. The Debtor filed a proposed plan and disclosure statement on July 7, 2011. *See* Docket Nos. 32 and 33. Since that time the Debtor has amended his plan and disclosure statement four times.[4] The Dooleys filed a claim in the amount of $1,944,458.75. *See* Amended Claim No. 7-2.

---

The Debtor and New Mexico Bank & Trust each filed a brief in support of the subordination of the Dooleys' punitive damages claim. *See* Debtor's Brief in Support of Subordination of Claim for Punitive Damages – Docket No. 228 and New Mexico Bank & Trust's Memorandum in Support of Separate Classification of the Claim for Punitive Damages – Docket No. 227. The Dooleys filed a response, and the Debtor filed a reply. *See* Cornelius Dooly, M.D. and Suzanne Hoffman-Dooley's Consolidated Response to New Mexico Bank & Trust's and Debtor Joe Michal Hyatt's Memoranda in Support of Subordination of the Punitive Damages Portion of the Dooleys' Claim (Amended Claim No. 7) ("Dooleys' Response") – Docket No. 232; Debtor's Reply Brief in Support of Subordination of the Claim for Punitive Damages – Docket No. 235.

[3]The facts recited in this opinion are either uncontroverted or based on the Debtor's disclosures set forth in the Disclosure Statement. The Court accepts as true the facts recited in the Disclosure Statement only for the purpose of this Memorandum Opinion.

[4]*See* Debtor's First Amended Disclosure Statement Dated October 2013 - Docket No. 129; Joe Michael Hyatt's First Amended Plan of Reorganization, Dated October 2012 - Docket No. 130; Joe Michael Hyatt's Second Amended Plan of Reorganization, Dated January 2013 - Docket No. 153; Debtor's Amended Disclosure Statement Dated

The Dooleys' claim is based on a judgment in favor of HDQ, LLC and David Hoverson, M.D. against the Debtor and Quiet Title, LLC, jointly and severally, entered in the First Judicial District Court, State of New Mexico, County of Santa Fe in Case No. D-101-CV-2009-02058 on October 15, 2010 (the "Judgment"). *Id.* A Transcript of Judgment and an Amended Transcript of Judgment (together, the "Transcript of Judgment") were recorded in the real property records of Santa Fe County. *Id.* The Judgment and Transcript of Judgment were assigned to the Dooleys. *Id.* The Judgment consists of $335,107 in compensatory damages and $1,500,000 in punitive damages.

The Plan contains twelve classes of claims. The Dooleys' claim is placed in the following classes:

| | |
|---|---|
| Class 3A and 3B | **Dooleys' Secured Claims.** The claims of the Dooleys, as their interests may appear, to the extent allowed as secured claims under § 506 of the Code on 13 Big Tesuque Canyon and 2853 Plaza Rojo, from their Amended Transcript of Judgment |
| Class 10 | **The unsecured claims of non-insiders.** . . . , and the Dooleys' claim for compensatory damages under the Judgment. |
| Class 11 | **Punitive Damages Claim.** The Dooleys' claim for punitive damages under the Judgment. |

Disclosure Statement, pp. 18 and 19..

The Debtor separately classified Farm Credit's claim which is based on the Debtor's guaranty of the debt of Trestle Ranch Corporation ("TRC") as follows:

| | |
|---|---|
| Class 9 | **Farm Credit.** The unsecured claim of Farm Credit against the Debtor from his guaranty agreement with Farm Credit for the mortgage debt of Trestle Ranch Corporation. |

---

January , 2013 - Docket No. 154; Debtor's Amended Disclosure Statement Dated February, 2013 - Docket No. 165; Joe Michael Hyatt's Third Amended Plan of Reorganization, Dated January 2014 - Docket No. 204; Debtor's Third Amended Disclosure Statement Dated January, 2014 - Docket No. 205; Joe Michael Hyatt's Fourth Amended Plan of Reorganization, Dated March 2014 - Docket No. 233; and Debtor's Fourth Amended Disclosure Statement dated March, 2014 - Docket No. 234.

Disclosure Statement, p. 19.

The Debtor owns 100% of TRC. *See* Disclosure Statement, Exhibit B. The debt of TRC to Farm Credit is secured by a mortgage against certain real property known as Trestle Ranch and possibly other property owned by TRC. The Debtor estimates that TRC owes Farm Credit approximately $2.5 million, and that the value of Trestle Ranch is $1,657,500. Disclosure Statement, p. 10 and Exhibit C. The Debtor estimates that the total amount of the claims in Class 10 is $1,184,291 and the total amount of the Dooleys' punitive damages claim in Class 11 is $1,589,383. *See* Debtor's Amended Chart of Unsecured Claims – Docket No. 208.

The Plan subordinates the Dooleys' Class 11 claim to the claims of general unsecured creditors placed in Classes 9 and 10. The Plan provides that the Dooleys' punitive damages claim will not be paid until after the unsecured claims in Classes 9 and 10 are paid in full. Fourth Amended Plan, p. 13.[5]

Under the Plan, Farm Credit's Class 9 claim will be reduced by TRC's payments and by the proceeds of the sale of Trestle Ranch, if sold. *See* Plan, p. 12. TRC is not currently in default under its loan from Farm Credit. The Debtor will make payments to Class 9 only upon the first to occur of three possible events: 1) a default by TRC on its obligation to Farm Credit; 3) after a sale of Trestle Ranch if the proceeds of the sale are insufficient to pay TRC's debt to Farm Credit in full; or 3) after all Class 10 claims are paid in full. *See* Plan, p. 12. Any monthly payments on

---

[5] The Fourth Amended Plan provides:

<u>Class 11.</u>    **Punitive Damages Claim. Impaired.** The amount of the Dooleys' claim for punitive damages may be reduced to the extent of any payment(s) on the Class 3A and 3B secured claims which are applied to the secured claims for punitive damages.

After payment in full of Class 1 administrative claims, any priority tax claims, secured claims, and Class 9 and Class 10 unsecured claims, the unpaid balance of the principal and pre-petition interest of Dooleys' claim for punitive damages will be paid, together with interest at the Plan Rate of Interest from the Petition date until paid, in monthly payments from the Debtor's Disposable Income until paid, except that payment will end on the first to occur of either (a) payment in full, or (b) Debtor's sixtieth (60th) and final monthly payment of his Disposable Income under this Plan.

Plan, p. 14.

-4-

Farm Credit's Class 9 claim required under the Plan will be made before any payments to the Dooleys on the punitive damages portion of their claim in Class 11. *Id.*

The Plan proposes to pay the unsecured claims in Class 10 pro-rata from the Debtor's actual disposable income and from the sale of assets over a sixty-month period following the confirmation date. *See* Plan, p. 13. If an event occurs requiring the Debtor to make monthly payments to Farm Credit and Class 10 claims remain unpaid, Farm Credit's Class 9 claim will be paid pro-rata with Class 10 claims. *See* Plan, p. 13 ("If the Class 10 claims are unpaid in full, Debtor's monthly payments of his Disposable Income will be on a pro rata basis equivalent to the pro rata amounts paid to Class 10 creditors, in pari passu, until the Class 10 claims are paid."). The Dooleys' unsecured claim in Class 10 may be reduced by any amounts paid to the Dooleys on their secured claim in Class 3A and 3B. *Id.* at p. 14.

The Disclosure Statement estimates that, although

> [n]o exact percentage distribution on allowed Class 9, 10 and 11 claims can be provided at this time . . . the Debtor believes that over the life of this Plan, the unsecured creditors in Classes 9 and 10 will receive 100% of the allowed amounts of their claims and the Class 11 claim will receive 40% of the allowed amount of that claim. Debtor believes that unsecured creditors will receive significantly more, over one million dollars more, under the Plan than they would receive from a liquidating Chapter 7 trustee.

Disclosure Statement, p. 19.

The Liquidation Analysis attached to the Disclosure Statement estimates that if this Chapter 11 case were converted to Chapter 7, a Chapter 7 trustee would have $1,012,301 available to distribute to holders of unsecured non-priority claims. Excluding the Dooleys' punitive damages claim in the amount of $1,589.383 and other claims based on the Debtor's guaranty of debts of third parties secured by non-estate assets, the Debtor identifies the following unsecured non-priority claims in Class 10: 1) the Dooleys' compensatory damages claim of

-5-

$355,075; 2) $92,700 owed to Christie Cockrell; and 3) $411.31 owed to two other creditors.[6]
*See* Debtor's Amended Chart of Unsecured Claim - Docket No. 208. In addition, the Debtor identifies unsecured debts based on guaranties of obligations owed by Debtor-owned entities and secured by assets of those entities as follows: 1) Farm Credit ($2,526,864.13); 2) New Mexico Bank & Trust ($217,041.15); and 3) Legacy Bank ($419,474.92). *Id.*

      B. *Why it is Appropriate to Decide the Classification Issue at the Disclosure Statement Stage of the Bankruptcy Case*

This case is at the disclosure statement phase. It is arguably premature for the Court to consider claim classification and treatment issues before creditors vote on the Plan and a confirmation hearing is held. *Cf. In re Colin,* 44 B.R. 806, 809 (Bankr.S.D.N.Y. 1984)(refusing to apply the best interest of creditors test for confirmation under § 1129(a)(7) and § 726(a)(4) to determine whether a punitive damages claim should be subordinated to other general unsecured claims where confirmation of the proposed plan was not yet at issue in the case, observing that "[t]here is no dissenting creditor before the Court at this time, and one may never materialize."). On the other hand, a Court may in its discretion deny approval of a disclosure statement where the proposed plan is patently unconfirmable.

In *In re American Capital Equipment, LLC*, 688 F.3d 145 (3rd Cir. 2012), the Third Circuit held "that a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *American Capital,* 688 F.3d at 154. The Third Circuit explained:

> A plan is patently unconfirmable where (1) confirmation defects [cannot] be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the

---
[6] Those two creditors are: Citibank - $258.50 and NM Gas Co. - $152.81. *See* Amended Chart of Unsecured Claims – Docket No. 208.

-6-

disclosure statement hearing. If no dispute of material fact remains and if defects cannot be cured by creditor voting or otherwise, then there is nothing in either the language or logic of the Code requiring the court or parties to grind the same corn a second time, and we will not read into the Code the requirement of redundancy.

*Id.* at 154-55 (internal citations and quotation marks omitted).

This Court agrees. Here, the Court will consider on the record before it whether the separate classification of the Farm Credit claim and the subordination of the Dooleys' punitive damage claim to other unsecured non-priority claims by separate classification and treatment renders the plan patently unconfirmable. In conducting this review, the Court relies on uncontroverted facts and the practical certainty that the Dooleys will vote to reject the Plan. The parties have consented on the record to the Court determining these issues on the record now before it.

"[T]he court's equitable powers under 11 U.S.C. § 105 'surely enable it to control its own docket' and thus, a '[c]ourt [should] not proceed with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable because it does not comply with [confirmation requirements].'" *American Capital,* 688 F.3d at 154 (quoting *In re Kehn Ranch, Inc.*, 41 B.R. 832, 832–33 (Bankr.S.D.1984)). The Court therefore finds that a decision regarding the Debtor's proposed separate classification of Farm Credit's claim and the separate, subordinate classification and treatment of the Dooleys' punitive damages claim at this stage in the proceedings is appropriate.

    C. *Classification Requirements Under 11 U.S.C. § 1122(a)*

The classification requirements of subsection (a) of 11 U.S.C. § 1122 expressly mandate that all claims or interests in a class be substantially similar to all other claims or interests in the class, except as provided in subsection (b).[7] Subsection (a) does not expressly require that all

---

[7]Subsection (a) of 11 U.S.C. § 1122 provides:

-7-

Case 11-10973-j7    Doc 242    Filed 04/23/14    Entered 04/23/14 11:04:06 Page 7 of 20

substantially similar claims or interests be placed in the same class. *See In re City of Colorado Springs Spring Creek Gen. Improvement Dist.,* 187 B.R. 683, 687 (Bankr.D.Colo. 1995)(observing that "[t]here is no requirement [in subsection (a)] that all substantially similar claims be placed in the same class . . ."). Subsection (b) permits separate classification of "every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." 11 U.S.C. § 1122(b). Some courts have held that the Bankruptcy Code's inclusion of subsection (b) means that there is some limitation on separate classification of substantially similar claims under 11 U.S.C. § 1122; otherwise, subsection (b) would be superfluous. *See In re Greystone III Joint Venture*, 995 F.2d 1274, 1278 (5th Cir. 1991)(finding that "[t]he broad interpretation of § 1122(a) [as imposing no restrictions on separate classification of similar claims] . . . would render § 1122(b) superfluous, a result that is anathema to elementary principles of statutory construction."). There is no controlling Tenth Circuit law on whether substantially similar claims may be classified separately. *In re Deming Hospitality, LLC,* 2013 WL 1397458, at *2 (Bankr.D.N.M. Apr. 5, 2013)(J. Thuma).

Grappling with the language of 11 U.S.C. § 1122, courts have taken different approaches in its application. Some courts hold that Section 1122 prohibits separate classification of substantially similar claims only when the separate classification is motivated by the need to gerrymander a consenting class of impaired claims to satisfy the requirements of Section 1129(a)(1). *See, e.g., Deming Hospitality,* 2013 WL 1397458 at *3 (collecting cases and adopting the "one clear rule" against gerrymandering). Other courts permit separate classification of similar claims if there is a sufficient rationale for the separate classification,

---

Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

-8-

such as a legitimate business justification.[8]  A third approach is that § 1122(a) only "prohibits single classification of dissimilar claims.  The plain language of this statute does not alone support any other restriction."  *In re ZRM-Oklahoma P'ship,* 156 B.R. 67, 70 (Bankr.W.D.Okla. 1993)(citations omitted).  *Accord Spring Creek Gen. Improvement Dist.,* 187 B.R. at 689 (agreeing with the analysis in *ZRM* and finding that "§1122(a) must be applied, not interpreted or modified.").  In resolving the classification issues raised in this case, the Court reaches the same result whether the Court applies the "one clear rule" or the requirement that the plan proponent provide a legitimate rationale for separate classification.

>   D.  *No Unfair Discrimination Under 11 U.S.C. § 1129(b)(1)*

Under Bankruptcy Code § 1129(b)(1), the Court may not confirm a plan that discriminates unfairly with respect to a class of claims that has not accepted the plan. [9]  There is no controlling Tenth Circuit law on what constitutes unfair discrimination.  Again, courts considering this issue have taken different approaches.

"The concept of 'unfair discrimination' applies to whether a plan properly treats claims or interests differentially."  *In re First Magnus Fin. Corp.*, 2008 WL 450447, at *6

---

[8] *See In re Barakat,* 99 F.3d 1520, 1526 (9th Cir. 1996)(separate classification of similar claims requires a "legitimate business or economic justification"); *Boston Post Road Ltd. P'ship v. F.D.I.C. (In re Boston Post Road Ltd. P'ship),* 21 F.3d 477, 483 (2nd Cir. 1994)("the debtor must adduce credible proof of a legitimate reason for separate classification of similar claims."); *In re Adelphia Communications Corp.,* 368 B.R. 140, 246-247 (Bankr.S.D.N.Y. 2007)("Although section 1122(a), by its terms, doesn't require that all similarly-situated claims be classified together, caselaw has made clear that separate classification of substantially similar unsecured claims is permissible only when there is a reasonable basis for doing so or when the decision to separately classify 'does not offend one's sensibility of due process and fair play.'")(quoting *In re One Times Square Assocs. Ltd. P'ship,* 159 B.R. 695, 703 (Bankr.S.D.N.Y. 1993));  *In re Armstrong World Indus., Inc.,* 348 B.R. 136, 159 (D.Del. 2006)("A classification structure satisfies section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar." )(citations omitted); *In re Corcoran Hosp. Dist.,* 233 B.R. 449, 455 (Bankr.E.D.Ca. 1999)(stating that "there must be a business or economic justification for separate classification of unsecured claims")(citations omitted).

[9] Section 1129(b)(1) provides:
>   Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>   11 U.S.C. § 1129(b)(1).

(Bankr.D.Ariz. Feb. 15, 2008)(citing *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 787 F.2d 1352, 1364 and n. 18 (9th Cir. 1986)(additional citation omitted)). Although various tests have been adopted to determine whether disparate treatment constitutes unfair discrimination, "[t]he hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination." *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 228 (Bankr. D.N.J. 2000)(citing numerous cases). Some courts also consider whether the discrimination is proposed in good faith as well as the treatment of the classes discriminated against. *In re Crosscreek Apartments, Ltd.*, 213 B.R. 521, 537 (Bankr.E.D.Tenn. 1997)(citing cases). Another general approach to assess whether a debtor's proposed discriminatory treatment of a particular class is unfair focuses on whether the disparate treatment is "grossly disproportionate" to the proposed treatment of other similar claims: the higher the degree of disproportionate treatment, the heavier the burden on the plan proponent to justify the treatment. *Deming Hospitality,* 2013 WL 1387458 at *6 (distilling the unfair discrimination test to the following general rules: "(1) if the disparate treatment is 'grossly disproportionate' the plan proponent will have a heavy burden to justify the treatment, and (1) if a plan is feasible and could be confirmed without materially disparate treatment, then the burden on the plan proponent to justify disparate treatment will be particularly heavy.").

      Each of these approaches identifies criteria to better enable the Court to make a reasoned evaluation of the concept of unfair discrimination. This Court believes the best approach to evaluate whether the disparate treatment "discriminates unfairly" as that term is used in 11 U.S.C. § 1129(b)(1) is to consider: 1) whether there is a reasonable basis for the disparate treatment; 2) whether the disparate treatment is necessary to confirm the plan; and 3) whether

-10-

the disparate treatment is proposed in good faith. *See In re Copeland,* 742 F.3d 811, 813 (8th Cir. 2014)(applying the following four-part test for unfair discrimination: "'(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination.'")(quoting *In re Leser,* 939 F.2d , 669, 671 (8th Cir. 1991)(citing *AMFAC Distribution Corp. v. Wolff (In re Wolff),* 22 B.R. 510, 512 (9th Cir. BAP 1982); *In re Storberg,* 94 B.R. 144, 146 (Bankr.D.Minn. 1988)).[10] If the disparate treatment of similar claims is grossly disproportionate, or the plan could be confirmed with less disparate treatment, the Court generally will require the plan proponent to carry a heavier burden to justify the disparate treatment. *See Deming Hospitality,* 2013 WL 1387458 at *6 (placing a heavy burden on the plan proponent to justify grossly disparate treatment). Application of these criteria is committed to the sound discretion of the Court. *Id. See also, In re Rocky Mountain Refractories,* 208 B.R. 709, 718 n.6 (10th Cir. BAP 1997)(noting that "Congress has granted the courts discretion to determine whether or not a plan discriminates unfairly and whether it is fair and equitable under all the circumstances of the case.").

E. *Whether the Debtor May Separately Classify Farm Credit's Unsecured Claim*

The Dooleys contend that there is no business justification for the separate classification of Farm Credit's unsecured claim, and that the only purpose for separate classification is to gerrymander an impaired accepting class of creditors for confirmation purposes.[11] Based on the

---

[10]The Eight Circuit test includes a fourth part: "whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Copeland,* 742 F3d at 813. This Court agrees that such a consideration is relevant, and considers that issue to be subsumed in its three-part test.

[11]*See* Cornelius Dooley, M.D. and Suzanne Hoffman-Dooley's Consolidated Response to Farm Credit of New Mexico, FCLA's and Debtor Joe Michael Hyatt's Motions for Summary Judgment Relating to Farm Credit of New Mexico's Claim, pp. 10 - 11 (Docket No. 231). The Court will address other issues raised in the motions for summary judgment filed by the Debtor and by Farm Credit at a later time by separate order/memorandum.

nature of Farm Credit's claim and the Debtor's proposed treatment of Farm Credit's claim, the Court disagrees.

Farm Credit has an unsecured claim against the Debtor's bankruptcy estate based on the Debtor's guaranty of the debt of TRC. TRC secured its debt to Farm Credit by executing a Mortgage and Security Agreement. Farm Credit's claim is secured at least in substantial part by non-estate collateral owned by TRC. TRC is servicing the debt and is not in default. The Plan provides that the Debtor will make no payments to Farm Credit as long as the loan is not in default, the collateral securing the claim has not been sold, and Class 10 unsecured creditors have not been paid in full. To give Class 10 unsecured creditors preferential treatment in light of Farm Credit's third-party source of payment and collateral, the Debtor must separate classify Farm Credit's claim. This third-party source of payment on the debt, the third-party collateral securing the debt, and the proposed treatment of Farm Credit's claim under the Plan, distinguishes Farm Credit's claim from other general unsecured claims, and serves as sufficient basis for the separate classification of Farm Credit's claim. *Cf. In re Johnston,* 21 F.3d 323, 328 (9th Cir. 1994)(claim that is partially secured by collateral of a non-debtor is not substantially similar to other unsecured creditors and may be classified separately); *In re Loop 76, LLC,* 465 B.R. 525, 541 (9th Cir. BAP 2012)(under *Johnston,* a bankruptcy court may "consider the existence of a third-party source for payment, including a guarantor, when determining whether unsecured claims are substantially similar under § 1122(a).").

The Dooleys assert that the only reason for the Debtor's separate classification of Farm Credit's unsecured claim is to gerrymander an accepting impaired class for confirmation, contrary to the "one clear rule" that similar claims may not be classified differently "in order to gerrymander an affirmative vote on a reorganization plan." *Greystone,* 995 F.2d at 1279. *See*

*also, Boston Post Road,* 21 F.3d at 482 ("similar claims may not be separately classified solely to engineer an assenting impaired class[.]")(citing *Greystone,* 994 F.2d at 1279)(remaining citations omitted)). The Court agrees that gerrymandering votes to obtain a consenting class of creditors to satisfy 11 U.S.C. § 1129(a)(1) is not a sufficient basis for separate classification. However, as explained above, the Court finds that the Farm Credit's claim is not substantially similar to other unsecured claims. In addition, that Court finds that a legitimate reason exists for the separate classification. By separate classification, the Debtor may prefer Class 10 unsecured non-priority claims with respect to distributions from the estate while Farm Credit is being paid by its borrower, TRC, which pledged Trestle Ranch as collateral for the loan. In sum, the Debtor's separate classification of the Farm Credit claim does not make the Plan unconfirmable as a matter of law, and is not a reason for disapproval of the Disclosure Statement.

F. *Whether the Debtor May Subordinate the Punitive Damages Claim by Separate Classification and Plan Treatment*

The Debtor seeks to subordinate the punitive damages portion of the Dooleys' claim by separately placing the claim in Class 11 and providing that Class 11 will not be paid until all other non-priority, general unsecured claims are paid in full. Notwithstanding the Debtor's estimation in the Disclosure Statement that Class 11 will receive 40% of the allowed amount of that claim, the Plan provides that if there are insufficient funds to pay all other non-priority, general unsecured claims in full, the Dooleys will receive nothing on account of their punitive damages claim. The Dooleys assert that the Debtor may not subordinate their punitive damages claim to the claims of other general unsecured creditors as a matter of law: equitable subordination under 11 U.S.C. § 510(c) is not available to the Debtor and the Bankruptcy Code offers no other basis in Chapter 11 to subordinate the claim.

The Debtor concedes that he may not rely on the equitable subordination provision found in 11 U.S.C. § 510(c) as a basis to subordinate the Dooleys' punitive damages claim to other general unsecured creditors.[12] Instead, the Debtor asserts that subordination is required because other general unsecured creditors will not receive as much under the Debtor's proposed Chapter 11 plan as they would in a Chapter 7 liquidation unless the Dooleys' punitive damages claim is subordinated to the claims of other general unsecured creditors. In other words, the Debtor's justification for the separate classification of the Dooleys' punitive damages claim is that the Plan must do so in order to satisfy the best interest of creditors test implicated by the interplay between 11 U.S.C. § 1129(a)(7)(A)(ii) and 11 U.S.C. § 726(a)(4).[13] Subordinating the Dooleys'

---

[12]Section 510(c) provides, in relevant part:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or a part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]
> 
> 11 U.S.C. § 510(c)(1).

In *United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996), the Supreme Court held that § 510(c) could not be used to subordinate a tax penalty. *See CF & I,* 518 U.S. at 227 – 228. *CF & I* based its holding on its earlier decision in *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), which held that § 510(c) cannot be used to subordinate all non-compensatory post-petition tax penalty claims that would have otherwise received priority treatment because it would result in a categorical subordination of a claim contrary to the priorities established by Congress. *Noland,* 517 U.S. at 543. *Noland* did not decide "whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated." *Noland,* 517 U.S. at 543. After *CF &I* and *Noland*, at least one court has found that equitable subordination may not require inequitable conduct on the part of a creditor such that a debtor could subordinate a creditor's punitive damages claim. *See, e.g., In re Friedman's Inc.,* 356 B.R. 766, 777 (Bankr.S.D.Ga. 2006)(finding that, in the Eleventh Circuit, "absence of creditor misconduct is not fatal to an action to equitably subordinate a claim[,]" and finding, based on the totality of the circumstances, that the penalty/punitive damages claims "should be equitably subordinated pursuant to Section 510(c) to the claims of all other general unsecured creditors"). But in the Tenth Circuit, the only exception to the inequitable conduct requirement for equitable subordination is in the context of tax penalty claims. *See In re Hedged-Investments Associates, Inc.,* 380 F.3d 1292, 1301 (10th Cir. 2004)(finding that equitable subordination under § 510(c) requires some inequitable conduct on the part of the creditor and declining "to extend the 'no fault' equitable subordination exception applied in *CF & I Fabricators* beyond the tax penalty context."). Because the Dooleys' claim is not a tax penalty claim, and because there is no evidence before the Court that the Dooleys' have acted improperly, equitable subordination under 11 U.S.C. § 510(c) is not available.

[13] *CF & I Fabricators* left open the question of whether the interplay between the Chapter 11 confirmation requirements and Chapter 7's priority scheme might serve as a basis to subordinate a claim. *See CF & I Fabricators,* 518 U.S. at 228 (explaining that because the Tenth Circuit did not consider this newly raised argument on appeal, the Supreme Court was required to "review the subordination on the assumption that the Court of

-14-

punitive damages claim to the claims of other general unsecured creditors under the Debtor's Plan through separate classification and treatment, according to the Debtor, merely accomplishes what 11 U.S.C. § 1129(a)(7) and 11 U.S.C. § 726(a)(4) require when there are insufficient assets to pay all unsecured creditors in full: payment of the punitive damages claim only *after* payment of other general unsecured claims.

While the Court agrees with the Dooleys that the need to satisfy the best interest of creditors test for confirmation is not by itself a sufficient reason to subordinate the Dooleys' punitive damages claim, the Court disagrees that the Bankruptcy Code provides no basis for subordination of their claim in Chapter 11 other than equitable subordination (not available here). The Court also disagrees that satisfying the best interest of creditors test is wholly irrelevant to whether subordination is permitted. Unlike Chapter 7,[14] the Bankruptcy Code does not specify the priority to be accorded in a Chapter 11 case to a punitive damages claim relative to other unsecured non-priority claims. And although 11 U.S.C. § 510(c) recognizes that the equitable subordination doctrine may provide a method in a Chapter 11 case to subordinate one unsecured non-priority claim to another, the Bankruptcy Code does not provided that equitable subordination is the exclusive method to subordinate a claim. In fact, 11 U.S.C. § 1129(b)(1) expressly provides that it applies "[n]otwithstanding section 510(c)." 11 U.S.C. § 1129(b)(1).

The appropriate mechanism to subordinate claims in Chapter 11 without reliance on the equitable subordination provision found in 11 U.S.C. § 510(c) is separate classification and

---

Appeals placed no reliance on the possibility that the Bankruptcy Code might permit the subordination on any basis except equitable subordination under § 510(c).")

[14]*See* 11 U.S.C. § 726(a)(2) to (a)(5) (providing that claims for multiple, exemplary or punitive damages, or for a fine, penalty or forfeiture are subordinated to other unsecured claims other than claims for post-petition interest). Although punitive damages claims are statutorily subordinated under 11 U.S.C. 726(a)(4), that provision does not apply in Chapter 11 cases. *See* 11 U.S.C. § 103(b)("Subchapters I and II of Chapter 7 of this title apply only in a case under such chapter.") *Cf. In re O'Connor,* 67 B.R. 538, 541 (Bankr.W.D.Okla. 1986)(observing that, "[w]ithout question, § 726 is inapplicable in chapter 11 cases. Accordingly, we may not utilize § 726 to subordinate the claim of the DOE even should we determine that it is in the nature of a penalty.")(internal citation omitted).

treatment, subject to the following limitations: 1) a legitimate reason other than gerrymandering an accepting impaired class exists for the separate classification; 2) the confirmation requirement of 11 U.S.C. § 1129(b)(1) that a plan not discriminate unfairly with respect to the treatment of a class of claims that has not accepted the plan is satisfied; and 3) the absolute priority rule of 11 U.S.C. § 1129(b)(2) does not bar confirmation (not at issue for purposes of this Opinion).

The Debtor asserts that legitimate reasons for subordination of the Dooleys' punitive damages claim through separate classification and treatment are: 1) to prevent dilution of non-punitive damages claims in Class 10, otherwise innocent creditors holding compensatory damage claims would be punished for the Debtor's wrongdoing that led to the punitive damages award; and 2) to satisfy the best interest of creditors test. There is some support for this position.

In *In re Zante, Inc.,* 467 B.R. 216 (D.Nev. 2012), the court considered whether the debtor could separately classify and subordinate punitive damages claims to claims of other general unsecured creditors. While acknowledging that such separate classification and treatment satisfied the best interest of creditors test, the *Zante* court ultimately found that the proposed subordination discriminated unfairly. *Zante,* 467 B.R. at 219 – 220. The *Zante* court observed that "[t]he usual rationale for subordinating punitive claims to other claims is that it is inequitable to make a debtor's innocent creditors suffer a prorated share of a debtor's punishment by diluting their claims in favor of a punitive claim." *Id*. at 219 (citing *In re GAC Corp.,* 681 F.2d 1295, 1301 (11th Cir.1 982)). However, placing the punitive damages claim in the same class as other unsecured claims in *Zante* would not have diluted the return to the other unsecured creditors; it only would have reduced the capital remaining for the reorganized debtor. *Id.* at 219 - 220. Consequently, the usual rationale for subordinating punitive damages claims did not apply. *Id.*

-16-

Case 11-10973-j7    Doc 242    Filed 04/23/14    Entered 04/23/14 11:04:06 Page 16 of 20

In *Owens Corning v. Credit Suisse First Boston,* 322 B.R. 719, 724 (D.Del. 2005), the court suggested in *dicta* that "if subordination of punitive damage claims is mandated in Chapter 7 liquidations, it seems entirely appropriate to subordinate such claims in the Chapter 11 setting."). *See also* 7 Collier on Bankruptcy § 1129.02[7][c][ii] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. rev. 2012)(stating that "section 726(a)(4) also provides a basis for different classification of claims in a chapter 11 plan . . . . if a chapter 11 plan proposes to pay such a class of penalty claims less than other unsecured claims, this treatment would not be a basis for denying confirmation so long as the proposed plan treatment gives such a penalty class at least as much as it would have received in a chapter 7 distribution.")(citing *Owens Corning,* 322 B.R. at 723-724).[15]

The Court rejects the rationale that punitive damages claims may be categorically subordinated under a Chapter 11 plan through separate classification and treatment of claims so that innocent creditors do not suffer a prorated share of a debtor's punishment by diluting their claims in favor of a punitive damages award. Outside of bankruptcy, punitive damage and other unsecured claims have the same priority. In Chapter 7, but not in Chapter 11, punitive damage claims are subordinated by statute. *See* 11 U.S.C. § 726(a)(4). To allow a plan proponent to subordinate punitive damage claims categorically to other unsecured claims would be to give the other unsecured claims a priority. This would contravene the priority scheme set forth in 11 U.S.C. § 507(a). *Cf. Noland,* 517 U.S. at 536 (holding "that the bankruptcy court may not

---

[15]*See also Friedman's,* reasoning that "the failure to subordinate the penalty/punitive claim will dilute the dividend of all other unsecured creditors" and that "this dilution is inequitable when the penalty/punitive claim arises due to the Debtor's misconduct yet the cost of that conduct would be borne and suffered by innocent creditors holding compensatory, non-penalty claims." *Friedman's,* 356 B.R. at 777. In *Friedman's*, the court relied on § 510(c) to equitably subordinate a claim for punitive damages, but also reasoned that in order to meet the requirements of § 1129(a)(7)(A), "Section 726(a)(4) must be applied, with the result that all penalty/punitive claims are subordinated." *Id.* at 778. This statement is dicta. *See, Friedman's* 356 B.R. at 778 (acknowledging that "the Court was not called upon to perform the hypothetical Chapter 7 liquidation analysis.").

-17-

Case 11-10973-j7    Doc 242    Filed 04/23/14    Entered 04/23/14 11:04:06 Page 17 of 20

equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities.").

Further, the need to satisfy the best interest of creditors confirmation requirement does not by itself justify separate classification and treatment of claims. If such rationale were sufficient, any separate classification and treatment of claims would be permitted if necessary to satisfy a confirmation requirement. The logical implication of this approach would be to permit gerrymandering of votes through separate classification if necessary to satisfy 11 U.S.C. § 1129(a)(10). Separate classification to gerrymander votes has been uniformly rejected.[16]

What other rationale might support separate classification and plan treatment that results in the subordination of a class of a class of unsecured punitive damages claims without running afoul of the restrictions on separate classification or the proscription against unfair discrimination? If a debtor can achieve a significantly greater return for all unsecured creditors, including the creditor holding the subordinated claim, as compared with the expected return in a Chapter 7 liquidation, a debtor acting in good faith may be able to justify the separate, subordinated classification and treatment of the claim and not "unfairly discriminate." Based on the uncontroverted evidence now before it, the Court cannot determine whether the Debtor's proposed separate classification and treatment of the punitive damages portion of the Dooleys' claim can meet this test. But because the proposed separate classification of the Dooleys' punitive damages claim does not fail as a matter of law, the Debtor may proceed to confirmation under his current Plan and Disclosure Statement should he choose to do so.

---

[16]*See, Greystone,* 995 F.2d at 1279 (elucidating the "one clear rule" restricting classification of claims as follows: "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."); *Deming Hospitality,* 2013 WL 1397458 at *2 (surveying cases and observing that "[t]he main judicial gloss on § 1122(a) is that the subsection prohibits a debtor from separately classifying similar claims to 'gerrymander' a consenting class.").

More specifically, at confirmation, the Debtor may be able to satisfy the classification requirements of 11 U.S.C. § 1122 and the unfair discrimination provisions of 11 U.S.C. § 1129(a)(1) with respect to the separate, subordinate classification of the Dooleys' punitive damages claim by presenting sufficient evidence the following: 1) the Plan cannot be confirmed with less disparate treatment (*i.e.*, because the complete subordination of the Dooleys' punitive damages claim is necessary to satisfy the best interest of creditors requirement or there are compelling reasons why less disparate treatment should not be required); 2) that there is a reasonable basis for the grossly disparate treatment (*i.e.*, because confirmation of the Plan would likely result in a *significantly* greater recovery to the Class 10 unsecured non-priority claims *and* to the Dooleys on their unsecured claim as whole than would be paid on those claims if this case were converted to Chapter 7, taking into account the time value of money); and 3) the Debtor is not proposing the disparate treatment in bad faith so as to perpetuate the type of conduct that gave rise to the punitive damages award. The grossly disproportionate treatment of the Dooleys' punitive damages claim will require the Debtor to carry a heavier burden to justify the disparate treatment.

This approach furthers the important bankruptcy goal of maximizing value for creditors without unduly impinging upon the equally important principle of equality of distribution. It provides an appropriate level of protection to innocent unsecured creditors against a reduced recovery as compared to a Chapter 7 liquidation, and it provides a basis for confirmation in a reorganization case where the grossly disparate treatment of a punitive damages claim is necessary for a viable business to continue to operate.[17]

---

[17] In a reorganization case, other considerations may come into play.

CONCLUSION

Based on the foregoing, the Court concludes that the Debtor's proposed classification scheme is proper with respect to Farm Credit. Farm Credit's third-party source of collateral and payment sufficiently distinguishes its claim from those of other general unsecured creditors. As for the Dooleys' punitive damages claim, the potential justification for the separate classification and treatment of the Dooleys' punitive damages claim is sufficient to move forward to confirmation. The Court, therefore, will not deny approval of the Disclosure Statement. A separate order regarding the Disclosure Statement consistent with this Memorandum Opinion and the Court's oral ruling at the final hearing held April 10, 2014 will be entered.

/s/ Robert H. Jacobvitz
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 23, 2014

COPY TO:

Clifford C. Gramer, Jr.
Attorney for the Debtor
3733 Eubank Blvd. NE
Albuquerque, NM 87111

Mark Walsh Allen
William J. Arland, III
Arland & Associates, LLC
Attorneys for the Dooleys
201 Third St. NW, Suite 505
Albuquerque, NM 87102

Alice Nystel Page
Office of U.S. Trustee
PO Box 608
Albuquerque, NM 87103-0608